WASH HAMPTON V. A. N. ALFORD.

(No. ——.)

APPEAL from Van Zandt County. Opinion by WILL-
SON, J.

KEARBY & GREEN, counsel for appellant.

No counsel appeared for appellee.

§ 44. *Estoppel; elements of by conduct; facts held in-
sufficient to establish.* Hampton owned a race-horse,
which was kept by him at the stable of one Grammar.
Grammar and one Hamm went to the bank of one
Owens at Wills Point and handed to the cashier $200,
which they requested him to keep until a horse-race
which they had made was run and decided. That in case
the Hampton horse, which was run and backed by Gram-
mar, won said race, then the $200 were to be paid to Gram-
mar; if the other horse won, then the $200 were to be paid
to Hamm. The cashier was instructed not to incumber the
bank-books with the matter, but simply to make out and
keep a memorandum of the matter until the race was
decided and the money called for. Nothing was said by
the parties as to whom the money belonged. It appears,
however, from the evidence, that the $100 put up by
Grammar belonged in fact to Hampton, this appellant,
who, it seems, had given it to Grammar, with which the
latter was to make race for him (Hampton). This fact,
however, was only known before the race was run by
these parties themselves. Hampton's horse won the
race, and this entitled Grammar to the money he and
Hamm had staked upon the race with the cashier of
Owens' bank. As soon as the race was decided in favor
of the Hampton horse, and before Grammar could get
his money from the bank, the appellee, Alford, who had
an old judgment in the justice's court against Grammar,

sued out a writ of garnishment against the cashier and Owens, the owner of the bank, in order to subject the $200 aforesaid to the payment of his judgment. He was told that the money was not Grammar's, but Hampton's; but he said the matter was in law and the law would have to decide it. He sued out two writs of garnishment, which he dismissed of his own motion for defects in his papers. His last writ of garnishment was against Owens, the owner of the bank. Owens, the garnishee, answered this writ, saying there were $200 in his bank belonging to Grammar. Hampton, appellant in this case, inter-vened in the garnishment suit of Alford against Owens and claimed that the $200 belonged to him, and that in the matter of the horse-race — the making the bet upon the same — Grammar was acting as his agent. Alford claimed, in effect, that the acts, conduct and representa-tions of Grammar as to the money, even if he was in fact the agent of Hampton, and the conduct of Hampton in permitting his agent to hold himself out as the owner of the money, and the conduct of both parties in concealing the true ownership of the same, was such a fraud upon their part as constituted in law an estoppel to any right or claim of right which Hampton might have had in and to the money. It appears that the case was tried upon the issue of estoppel *vel non*, and there was a verdict and judgment in favor of Alford against the garnishee, Owens, finding the money in his hands subject to the payment of the judgment of Alford v. Grammar, and also for costs against the intervenor, Hampton. From this judgment Hampton prosecutes his appeal to this court.

It will be noted and remembered that before Alford sued out the last writ of garnishment, the one upon which the trial was had, he was notified that the money was Hampton's and not Grammar's. "An estoppel is the preclusion of a person from asserting a fact by pre-vious conduct inconsistent therewith on his own part, or,

the part of those under whom he claims, which he cannot be allowed to call in question." [7 Amer. & Eng. Enc. Law, p. 1.] Estoppel *in pais* is a right arising from acts, admissions or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged. [Bigelow. Estop. (4th ed.) 445.] The essential elements of estoppel by conduct are: (1) There must have been a false representation or a concealment of material facts; but silence, when it is the duty of the party to speak, is equivalent to concealment. The representation must be plain and certain. (2) The representation must have been made or the concealment practiced with knowledge of the facts, unless the party was bound to know them. (3) The party relying upon the representation must have been ignorant of the facts. He is justified in acting on clear, positive representations, though he has means of knowing the truth of the matter. (4) The representation must have been made or the concealment practiced with the intention that it should be acted upon; but negligence amounting to a breach of duty supplies the place of intent. (5) The other party must have been induced to act upon the representation or concealment. His action must have been of a character to result in substantial prejudice, were he not permitted to rely on the estoppel. [7 Amer. & Eng. Enc. Law, p. 12 et seq.; Bigelow, Estop. (4th ed.) 679.] Under the rules of law announced, we are of opinion the facts stated do not show a case of estoppel: (1) No positive representations were made by Grammar that the money was his. (2) No duty required that the money should be deposited in Hampton's name. (3) No concealment with intent to defraud, mislead or injure any one is made to appear. (4) Before suing out the last writ of garnishment, Alford was not ignorant of the facts, but had been apprised that the money was Hampton's. (5) Alford had not been induced to change his position, nor has he been injured by the supposed

concealment of the rights of Hampton and Grammar in the money. His debt against Grammar was an old one, in no manner connected with this transaction. His suing out his writ of garnishment was a voluntary act upon his part, the exercise of a legal right, which did not alter his condition with relation to his debt. If he felt that he was legally bound to sue out the writ of garnishment in order to secure his debt, this would constitute no estoppel in his favor. He cannot claim that his voluntary act in the exercise of a legal right, or in the effort at the enforcement of a supposed legal remedy, has so changed his *status* as that he would be entitled to be recompensed for his trouble or mistake by a party in no manner legally responsible for it.

December 18, 1889.    Reversed and remanded.