GENERES v. SECURITY LIFE INS. CO. OF AMERICA.

(Court of Civil Appeals of Texas. Dallas. Jan. 10, 1914.)

1. EVIDENCE (§ 450*)—PAROL EVIDENCE—CONSTRUCTION OF CONTRACT—EXISTENCE OF AMBIGUITY.

A contract between an insurance company and an agent provided that the agent was to receive a specified salary, and, in addition thereto, commissions according to a certain scale, and that, at the end of a certain time, the company would add together the salary, commissions, expenses, etc., and, if the total cost of the business was less than commissions according to a scale therein set out, the agent should receive the difference. An amendment to this contract provided, among other things, that the agent's monthly drawing account should be increased to $350. Held, that the two contracts, when considered together, presented an ambiguity, in that in the first the agent's compensation was designated a salary, and in the second an advance against commissions, thus rendering parol evidence admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 450.*]

2. INSURANCE (§ 84*) — AGENTS — COMPENSATION—EVIDENCE—SUFFICIENCY.

In an action by an insurance agent against the company to recover upon agency contracts, evidence held to support a finding that it was the intention of the parties in the execution of the contracts that the agent should be allowed a monthly advance to be charged against his commissions to be earned under the contracts, and that the advances were not intended as a salary to be paid in addition to the commissions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

3. INSURANCE (§ 84*)—AGENT—CONTRACT OF EMPLOYMENT—CONSTRUCTION BY PARTIES.

A contract between an insurance agent and the company provided that the agent was to receive a specified salary, and, in addition thereto, commissions computed according to a specified scale; that, at the end of a certain time, the company would add together the salary and commissions, and all expenses, and, if the cost of the business was less than a specified scale of commissions, the agent was to receive the difference. Both the agent and the company treated the contract as though he were working under the larger scale of commissions, and treated the salary as a monthly advance against these commissions. Held, that the agent was estopped, after so construing the contract, and acquiescing in the same construction thereof by the company, to thereafter insist that he was working on a salary basis.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

4. INSURANCE (§ 84*)—ACCOUNTING BY AGENT—SUFFICIENCY OF EVIDENCE.

In an action by an agent against an insurance company, evidence held to support a finding that notes received by the agent upon premiums, and sent to the company, were, with the agent's knowledge, only received by the company as collateral to his account, and he was not entitled to commissions until the notes were paid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

5. ACCOUNT STATED (§ 6*)—ASSENT OF PARTIES.

Where the secretary of an insurance company took from the books an itemized statement of the account with an agent, and the agent went carefully over it and pointed out two or three errors, which were accordingly corrected, and said that the account was otherwise correct, there was an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30–39; Dec. Dig. § 6.*]

6. ACCOUNT STATED (§ 6*)—IMPLIED CONSENT—ESTOPPEL—GROUNDS.

Where an insurance agent knew that the company was making an advance to him on the belief that certain items of dispute were settled by an account stated, the agent was estopped to thereafter insist that there was no account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30–39; Dec. Dig. § 6.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**7. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—NECESSITY OF STATEMENT.**

An assignment not followed by a sufficient statement of facts to enable the court to determine, without resort to the record, whether there _was error in the ruling complained of will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by L. M. Generes against the Security Life Insurance Company of America. From a judgment for defendant, plaintiff appeals. Affirmed.

Love & Taylor and Royall R. Watkins, all of Dallas, for appellant. Bull & Johnson, of Chicago, Ill., and Allen & Flanary, of Dallas, for appellee.

TALBOT, J. Appellant brought this suit against the appellee to recover the sum of $6,606.76, alleged to be due upon life insurance agency contracts. Appellant prayed, also, for an accounting. The trial was had without a jury, and resulted in a judgment for appellee, and appellant appealed.

The first contract mentioned in appellant's petition, which is dated March 16, 1909, and signed by the parties, after stating that it is the basis for contract between appellee and appellant covering such parts of the state of Texas as may be agreed upon from time to time, provides:

"The agent under this agreement is to have the title of supervisor, and will receive a salary of $250.00 per month and all necessary traveling expenses. The agent will be allowed the following schedules of first year's commissions on personal business, and will be required to make contracts with his subagents on the basis of the schedule of commissions given below; he will also require from all of his agents that he assists one-half of their commissions for the assistance:

| Kind of Policy. | First-Year Commission Percentage. |
| --- | --- |
| Economic Ordinary Life N. P. | 50 |
| Economic 20-Payment Life N. P. | 50 |

"[Then follows 16 other kinds of policies and first-year commission percentage.]

"At the end of a certain time, hereafter to be agreed upon, the company will add together the agent's salary, all expenses and commissions paid to agents, and amounts due by reason of canceled and undelivered business, and, if the total cost of his business thus computed on the various forms of policies is less than the following schedule of commissions, counting paid for business only, the difference, if any, shall be due and payable to the agent:

| Economic Life N. P. | 69 |
| --- | --- |
| Economic 20-Payment Life N. P. | 77 |

"[Then follows 14 other kinds of policies and commission percentages.]

"The agent will be allowed the following collection fees, provided he remains in the service of the company:

| Kind of Policy. | Collection Fees Percentage. | No. of Years. |
| --- | --- | --- |
| Economic Ordinary Life N. P. | 5 | 5 |
| Economic 20-Payment Life N. P. | 5 | 5 |

"[Then follows 16 other kinds of policies, collection fees, percentages, and number of years.]

"The agent will be allowed to pay his subagents such collection fees under the above schedule of policies as he may agree with them, conditioned upon their remaining in the service of the company, and not greater than the fees contained in the regular printed contract. All settlements taken by the agent are to be sent to the company."

On August 2, 1910, appellee wrote appellant as follows:

"Mr. L. M. Generes, Box 606, Dallas, Texas —Dear Sir: Referring to your contract with this company, I beg to state the company is willing:

"First. To increase your monthly drawing account, beginning August 1, 1910, to $350.00 per month.

"Second. To make you an allowance of $600.00, which is to be payment in full for the extra commissions requested by you on coinsured business prior to August 1, 1910, with the understanding that the same is to be charged to your account until the notes given on all of the coinsured business have been paid in full in cash to the company.

"Third. On all future coinsured business to allow you on the ordinary and 20-payment life policies a flat commission of 60 per cent., less taxes and board contract dividends, said commissioners to be credited to your account, and not to be paid to you in cash until the same have been received in cash by this company.

"Fourth. In the event of the company contracting direct with C. B. Storer, it is understood that you will waive any interest in any of the business produced by him under said contract.

"Fifth. With the understanding that you will use your best endeavors to turn in a satisfactory volume and quality of business as you have done heretofore until your second year is over, which, according to our understanding, is March 1, 1911.

"All of the officers of the company join in wishing you health and prosperity. [Signed] Security Life Insurance Company of America, by J. B. Sells, Vice President."

Appellant indorsed on said letter his acceptance of the terms here proposed, signed his name thereto, and returned the letter to appellee. On March 1, 1911, appellant and appellee entered into another contract, the terms of which, among others, are that appellee thereby appoints appellant as its agent, with authority only of securing applications

for insurance on the lives of individuals in the territory designated, appellant agreeing to comply with all instructions contained in appellee's rate book, and which may be given him from time to time by the appellee; that appellant shall collect first-year premiums and such other premiums as he may be authorized to collect when furnished with the regular receipts of the appellee for such premiums; that he shall remit promptly to appellee all premiums when collected, such remittances to be made with the application when a cash settlement is taken at the time of writing same. In the event a cash settlement by the applicant is not made until delivery of the policy, then the net due the appellee shall be remitted in cash immediately. Notes taken by the agent in settlements, when taken at time of delivery of policy, may be retained by the appellant; but, in all cases when notes are taken, the net due the company shall be due and payable from the agent immediately upon said notes being discounted or sold by the appellant, and, if not so discounted or sold, the net due the company shall in all events be due and payable to appellee 60 days after such notes are taken by the agent. The appellee, in consideration of the services to be rendered by appellant while the contract is in force, agrees to pay appellant, on all business written by him, a commission upon the first year's premium of each policy accepted and paid for in cash, and a renewal commission upon subsequent premiums when paid in cash in accordance with certain tables set forth in the contract. This contract further provides: "That its execution abrogates, terminates, and renders void all previous agency contracts made between said parties, and all claims to compensation by the agent under any previous agency contract are hereby waived and canceled except as to first year's commissions, if any, that may now be due, or shall become due, the agent on business heretofore written. Provided that nothing herein contained shall be construed to affect or waive any claims of any kind, whether for money or otherwise, of the company against the agent under any previous agency contract; that, beginning March 1, 1911, the company agrees to advance said agent the sum of three hundred and fifty dollars ($350.00) per month and all necessary and actual traveling expenses. The same will be charged to his account. In consideration of these advances, said agent shall remit to the company full premiums collected on all business written until such advances and all other indebtedness due the company from the agent shall have been repaid by the amount of commissions to which said agent otherwise would have been entitled under clause (3)—A; that renewal commissions on business written by the agent prior to the date of this contract shall be allowed as per schedule in paragraph (3)—A, but any renewals

on business written under prior contracts shall not be in the aggregate for a longer period than shown in (3)—A, and any renewals paid on same shall be considered as paid under this contract."

This contract in duplicate was sent from appellee to appellant's house in Dallas, and before signed by him appellant telegraphed appellee in Chicago, Ill., as follows: "Contracts received. Am I to interpret that business must be paid for in cash within sixty days or will company take notes as in the past? Will I be allowed to write four twenty-five thousand applications as agreed by Sells with commissions as in former contract on excess? Wire reply." To this telegram, appellee replied by wire as follows: "Yes to both propositions except that notes must be taken for reasonable length of time." The contention of the appellant is, in substance: That under said first contract he was to receive a salary of $250 per month, traveling expenses, and, in addition thereto, commissions on premiums for the first year, as provided in the first, or smaller, schedule of commissions, unless, at the end of a certain time to be agreed upon, the salary, expenses, commissions paid to agents, etc., added together, should total less than the commissions computed under the second, or greater, schedule of commissions, in which event the difference to be due and payable to the agent. That the second schedule as a basis for computation of commissions was never in effect, in that the contingency upon which it was to become effective never occurred. That the appellant in either event was to receive, in addition to salary and commissions, certain collection fees and subagent commissions. Appellee pleaded in defense specially: That its liability during appellant's entire period of employment from March 16, 1909, until March 1, 1911, was fixed by the two contracts above mentioned, dated, respectively, March 16, 1909, and August 2, 1910, together with a third contract dated March 1, 1911. That there had been no final settlement between appellant and appellee. That the $250 per month stipulated in said first contract as salary, and claimed by appellant as such, was not in reality a salary, but was an advance to be charged against appellant's commission account accruing under the second, or greater, schedule of commissions set out in said first contract. That appellant turned in to appellee for first-year premiums uncollected notes aggregating the sum of $9,847.76, and certain lien notes aggregating the sum of $944.84, and that appellant's commissions were not earned under said contracts until the notes were paid. That, if all of said notes were collected, there would be due appellant the sum of $723.79. That said notes were accepted by appellee as a matter of protection, to be held by it for collection purposes, against advances on appellant's account without creating any liability therefor to him until collected.

That such was the understanding between the parties at the time of the execution of the several contracts, which meaning was intended to be incorporated in said contracts by the language therein employed; and, if the language fails to express such meaning, it is due to mutual mistake of the parties, and that appellee is entitled to correction of the contracts, or, if the language of said contract is ambiguous, the meaning pleaded by defendant as above stated should be given the same, because of the intent of the parties, and because of the construction of the parties in accordance with such meaning, and in which construction appellee alleges the appellant acquiesced. Appellee pleads, also, two accountings and adjustments and an account stated with appellant; the first accounting being on July 25, 1910, covering all matters between the parties prior to the contract of August 2, 1910. Appellee, by its cross-bill, sought affirmative relief against appellant in the sum of $10,050 for alleged indebtedness of appellant to appellee, and for the further sum of $10,000 for alleged breach of contract; but before final judgment appellee announced in open court that it no longer would prosecute its cross-action, and caused the same to be dismissed. Appellant, by verified supplemental petition, denied generally appellee's allegations, and pleaded specially that the contract of March 1, 1911, was modified by telegrams constituting a part of the same.

In addition to the finding that the parties executed the contracts above referred to, the trial court made and filed the following conclusions of fact, which this court adopts:

"(4) I find that the plaintiff acted as the agent of the defendant in soliciting life insurance for it from said 16th day of March, 1909, until about the 4th day of September, 1911, and that in such employment the rights of the parties were fixed by the first-mentioned contract, as construed by the parties, from the 16th day of March, 1909, until about the 4th day of September, 1911, and that in such employment the rights of the parties were fixed by the first-mentioned contract, as construed by the parties, from the 16th day of March, 1909, until the 2d day of August, 1910, and that said rights were, from said 2d day of August, 1910, until the 1st day of March, 1911, fixed and determined by said first-mentioned contract, as construed by the parties, and as amended by said amendment of August 2, 1910, and that the rights of the parties from and after said 1st day of March, 1911, were fixed and determined by the contract of the last-named date.

"(5) From the time of the execution of the first contract until after the plaintiff left the employ of the defendant, the plaintiff and defendant computed the commissions of the plaintiff on the insurance written by him on the larger, or second, schedule in said first contract set forth, and treated the monthly salary advances as an advance to the plaintiff against the commissions earned by him, and the defendant charged the plaintiff on its books with all moneys paid to him, whether the same was advanced him or paid on account of expenses, and gave the plaintiff credit for all moneys collected and remitted by him, and gave him credit for all moneys collected on notes sent by him to the defendant in payment of premiums on business written by plaintiff; and it also charged plaintiff on its books with the net amount which would be due it, after deducting the larger schedule of commissions, as provided in said first contract. In other words, from the very inception of the first contract, the plaintiff and the defendant treated all business between them as though the time had arrived, as provided in said contract, when all salary, expenses, and costs of securing the business written by plaintiff should be added together, and the difference between that cost should be deducted from the total amount that would have been earned by plaintiff on the larger schedule of commissions, counting paid for business only, should be the earnings of plaintiff under said contract. Not only was the contract so treated, but the defendant kept the account of plaintiff, and acquiesced in by him. When an application for insurance was received by defendant from the plaintiff, and the policy was issued, the defendant, on its books, charged to plaintiff's account the net portion of the amount of the first year's premium, after deducting from the total first-year premium the amount of commissions which would be due plaintiff, based on the larger schedule of commissions, and all payments of premiums made by plaintiff to the defendant was credited to his account. In most cases notes were taken by plaintiff for the first-year premium on insurance procured by him; the notes were payable to the defendant, and were in most instances sent by the plaintiff to the defendant. Both the plaintiff and the defendant were engaged in the collection of the notes thus taken, and, when any amount was collected on these notes, it was credited to the plaintiff's account, and a credit slip was sent him by the defendant. When plaintiff collected any of the notes or any part thereof, if he sent the same to the defendant, he was given credit for the amount so sent on the books of the defendant. During the entire time that plaintiff acted for the defendant under the contracts, both parties treated the notes received in payment of premiums as though they were jointly interested in the same.

"(6) The total amount of commissions earned by plaintiff during the time he was in the employ of the defendant, based on the larger schedule of commissions, and counting all business, whether paid for or not, and counting the allowance agreed to be allowed for reinsured business, as set forth in the letter of August 2, 1910, was the sum of $21,743.87.

"(7) The defendant has paid to the plaintiff

a total of $16,356.28, consisting of monthly advances of $12,033.33, special advances against his interest in the notes held by defendant, $2,118, travelling and incidental expenses, $1,673.45, and office rent, $531.50.

"(8) The defendant, at the time of the trial, had on hand uncollected notes turned into it by plaintiff as payment of first-year premiums on business secured by him in the total sum of $10,773.89.

"(9) All monthly payments made to plaintiff by defendant were treated by both parties as advances to plaintiff against commissions earned by plaintiff under his employment.

"(10) In all the dealings between plaintiff and defendant from the date of the first contract to the time plaintiff left the employ of the defendant, it was never contended by the plaintiff until the filing of this suit that he was entitled to commissions on business secured by him until the notes taken in payment of the premiums were paid, and, in all instances where the defendant advanced plaintiff any money over and above his regular monthly drawing account it was considered by both parties as an advance against the plaintiff's interest in the uncollected notes on hand.

"(11) Plaintiff never, at any time prior to the institution of this suit, claimed that he was entitled to a monthly salary and the commissions, based on the smaller schedule of commissions as provided in the first contract. And all advances made to plaintiff over and above his monthly advancement was made by the defendant with the understanding, fully acquiesced in by plaintiff, that plaintiff was working for a commission based on the larger schedule of commissions, less the advances and expenses paid by defendant.

"(12) If plaintiff is entitled, under the first contract, as amended August 2, 1910, to a cash salary, his expenses, and the commissions as provided in the smaller schedule of commissions, as claimed by him, the defendant has paid him everything that is due him on this theory of the contract, unless it is liable to him for commissions on business for which he accepted notes in payment of the premiums, and which notes have not been paid.

"(13) On the 25th day of July, 1910, there was rendered to the plaintiff by the defendant an account in writing showing the account of plaintiff with the defendant on the 22d day of July, 1910, which was checked over by plaintiff, and certain objections pointed out in writing by him, which said objectionable matters were at his instance corrected, and when correct the same was a stated account between the parties of date July 22, 1910, which showed that at that time the plaintiff was indebted to the defendant in the sum of $14,843.55, which result was obtained in accordance with the method the defendant kept its books, as shown in paragraph 5 of these findings, which was in accordance with the way both parties construed the contract, that is, to allow plaintiff the larger scale of commissions, and charge him with all advances made to him. Accepting the stated account as correct at the time it purports to show the state of the account, there would not be anything due the plaintiff from the defendant at the time of the trial, whether the business was figured on the construction of the contract which the parties had given to it, or if figured on the basis claimed by plaintiff in his pleading.

"(14) Exhibit B attached to defendant's first amended original answer and cross-bill correctly shows the business secured by plaintiff, the net amount of the premiums that would be due the defendant from business secured by plaintiff, the amounts advanced and paid to the plaintiff, the amount of unpaid notes on hand and uncollected, except that some portion of the notes were paid between the date the exhibit was prepared and the date of the trial. The exact amount of unpaid notes on hand is shown in a prior finding, and I find the account contained in said exhibit correct in all respects except as to the amount of unpaid notes on hand.

"(15) In the course of dealing between the plaintiff and defendant, the defendant never accepted any notes forwarded to it by the plaintiff as payment of any indebtedness due it by plaintiff, but that the said notes were kept by defendant for collection purposes, and that the plaintiff was never credited with any of such notes, or any part thereof, until payment was made thereon, either in whole or in part, and then was only credited with the amount that was paid.

"(16) The defendant kept its books in this way, and the plaintiff knew from the inception of his relationship with the defendant that the defendant was treating the notes taken by him for policy premiums in the matter outlined above, and the plaintiff acquiesced in such course of dealing, and acquiesced in such treatment by the notes so made by defendant.

"(17) There was a verbal understanding between plaintiff and defendant at the time of making the first contract to the effect that the notes taken by plaintiff for premiums should be forwarded by him to the defendant, and that the defendant should hold them for collection purposes, and as collateral security against the advances made to him by the defendant from time to time.

"(18) The defendant sent to the plaintiff regularly statements showing that the notes so forwarded to it by the plaintiff were being treated in this manner, and that the plaintiff never offered any objection thereto until this suit was filed."

[1-3] The assignments of error relate solely to and challenge the correctness of the court's conclusions and the judgment rendered. The first is to the effect that the

court erred in finding that the rights of the parties were fixed by the contracts as construed by them, for the reason that said contracts were complete and unambiguous, and were not subject to be changed, varied, or added to by the construction of the parties. There is no specific assignment of error questioning the admissibility of the testimony upon which the court's finding here attacked is predicated either for the want of pleading or for any other reason, and this testimony abundantly sustains said finding. The provisions of the contracts with respect to the commissions and the amount appellant was to receive monthly for his services, when considered separately, may be certain and unambiguous, but, when taken and construed in connection with other provisions of the contract, and the contract considered as a whole, seems to present such uncertainty regarding these matters as authorized the introduction of parol evidence showing the sense and meaning in which the language employed was used. In the contract of August 2, 1910, "advances" is used in the same connection as "salary" is used in said contract of 1909, and evidently to express the same purpose and intention of the parties. That the contracts, however, were by all the parties thereto and at all times until appellant ceased to solicit insurance for appellee construed and treated as is contended by appellee, and as found by the court, is a conclusion that is almost irresistible when all the evidence bearing upon the question is fairly considered. The testimony of the appellant is at variance with some of the trial court's findings of fact; but this simply presented an issue of fact for the determination of the trial court, whose finding is conclusive upon this court. The evidence developed that appellant worked under the contract of March 16, 1909, until it was modified, at his request, by the letter or writing of August 2, 1910, above mentioned. Prior to this modification, and with the knowledge of appellant, and without objection on his part, the books of appellee had been so kept that the appellant was charged with all cash sent to him, with all advances made to him for traveling expenses, and with other items of a like nature. Likewise was he charged with the amount due the appellee under the maximum, or highest, rate of commissions which appellant was able to earn under the contract of March, 1909. Of this appellant was fully advised, and acquiesced in. For no charge was ever made against him on appellee's books, and no credit ever passed to his account without the forwarding to him immediately by the appellee of a debit and credit memorandum apprising him of the transaction, which were received and accepted by him without protest whatever. It is manifest that by his own actions appellant led appellee to believe that he construed the contract as appellee did, and that he was working under the maximum clause of the contract, and in-

duced appellee to increase his drawing account to the amount stated in the letter or contract of August 2, 1910. The request for the increase was made and granted after appellant had accepted an accounting with appellee, in which no mention was made of any other possible contingency under which he might be working, excepting the one which both parties had recognized in all of their dealings. We conclude, as did the trial court, in effect, that it was the intention of the parties in the execution of the contract of March, 1909, and as amended or changed by the contract of August, 1910, that appellant should be allowed a monthly advance of the sums mentioned in said contract and amendment, which should be charged against appellant's commissions to be earned under said contracts, and that said monthly advances were not intended as a salary to be paid appellant in addition to his commissions. This at all events, evidently is the way the contract was treated and construed by the parties, and its terms and provisions are of such a character and uncertainty that the right of the parties should be determined in accordance with their construction of them. As found by the trial court and heretofore shown, appellant always claimed commissions under the second or larger schedule mentioned in the contract, and by his acts treated the payments as advances against commissions to be earned by him. Both parties from the very inception of the first contract treated all business between them as though the time had arrived as provided in said contract when all salary, expenses, and costs of securing the business written by plaintiff should be added together, and the difference between that cost should be deducted from the total amount that would have been earned by plaintiff on the larger scale of commissions, counting paid for business only; that "all monthly payments made to plaintiff by defendant were treated by both parties as advances to plaintiff against commissions earned by plaintiff under his employment." Thus from the very inception of the dealings between appellant and appellee they recognized but one scale of commissions, the larger or maximum scale, against which was charged all advances and all expenses of procuring the business. It does not appear that appellant ever suggested to any one that he was working under any scale of commissions excepting the maximum scale. So that it occurs to us that whether or not the contract is capable of two constructions in regard to the money paid to appellant, that is, whether it was paid to him as an advance or as a salary, yet, since appellant induced appellee to believe that he was operating only on the maximum scale of commissions, and receiving the money given him as advances, and not a salary, and thereby so misleading appellee as to obtain an increase in his drawing account as provided in the contract of August 2, 1910, is estopped from

claiming that the contract of 1909 can be construed in any other way than as both parties construed it before and when they changed or modified it on August 2, 1910.

The evidence is amply sufficient to warrant the court's conclusions that the appellant acquiesced in the appellee's method of keeping its accounts, and that all monthly payments made to the appellant by appellee were treated by appellant as advances to him against commissions earned by him; and appellant's assignments 2 and 3, charging that the court erred in these findings, will be overruled.

[4] The sixth assignment, complaining that the court erred in finding that appellee was not liable to appellant for commissions on all business when notes were accepted by appellee, will also be overruled. The contention here is "that the contracts and modifications thereof in writing, which constitute the basis of plaintiff's cause of action, together with the evidence, do not warrant such finding." The record does not, in our opinion, sustain this contention. There is no provision in either contract upon which appellant sues entitling him to commissions on insurance secured by him where notes were taken for the premiums before the collection of such notes, and the evidence introduced on the subject abundantly supports the court's finding that commissions for writing such insurance were not earned until the notes taken for premiums due therefor were collected. The only provision of the contracts upon which appellant's cause of action is based that may be considered as in any way relating to the taking of notes for premiums is that "all settlements taken by the agent are to be sent to the company," and the record otherwise discloses that the notes sent in by appellant for settlements which he took on policies were never at any time included in the assets of appellee, but were simply held as collaterals; that at no time was appellant ever credited with the amount of his commissions when notes were taken for the premiums to be paid by the insured until such notes were paid. All of this appellant well knew and evidently acquiesced in, because it appears that no charge was ever made on appellee's books, or credit ever passed to his account, without a debit or credit memorandum being immediately sent to appellant apprising him of the transaction, and no word of protest to appellee's method of dealing with and treating these notes, or to its method of bookkeeping, appears to have been uttered by appellant to any officer of appellee until this suit was filed. Our conclusion is that the evidence was amply sufficient to show that the notes sent in by appellant to appellee for settlements which he took on policies were received by appellee, with appellant's knowledge, only as collateral to his account, and that the money paid him was simply an advance against commissions which were to be earned when the notes

were paid. It was shown without dispute that more than $9,000 remained uncollected at the time of trial on notes taken by appellant and sent to appellee, and the trial court correctly held that appellee was not then liable to appellant for such commissions as he will have earned when this money is collected. There is no provision of the written contracts relied on by appellant that was contradicted, varied, or added to by the introduction of the parol proof admitted to show that the notes taken by him in settlement of premiums were held by appellee as mere collateral, and that appellant's commissions for such business were not earned until such notes were paid by the makers thereof.

[5, 6] It is further assigned that the court erred in finding and holding that the account rendered appellant on the 25th day of July, 1910, was a stated account. We think there was no error in this action of the court. The court's finding is that on the 25th day of July, 1910, an account stated was had between appellant and appellee which showed that appellant was then indebted to the appellee in the sum of $14,843.55, and that, accepting the stated account as correct at that time, there would not be anything due the appellant from appellee at the time of the trial of this case, whether the business was figured on the construction of the contract which the parties had given to it, or on the basis claimed by appellant in his pleading. Now, as pointed out by counsel for appellee, it appears that in July of 1910 the plaintiff, on one of his trips for obtaining a further advance of money, went to the home office of appellee in Chicago, and requested that he be allowed to draw more heavily against his account. In order to see how much he owed, so that it might be ascertained whether collateral held against his account was sufficient to warrant a further advance of money, his entire account from the time he commenced business with the company up to the 22d day of July was gone over between Mr. C. A. Goodale, the then secretary, and the appellant. This account was taken from the books of the company, and reduced to writing. It appears that this detailed statement of the account was carefully gone over and checked by the appellant item by item, and that he made objection to several items appearing thereon. The objections which he made were reduced to writing, and he gave a written acknowledgment that, with the exception of those items, he took exception to nothing else in the account as incorrect. It also appears in evidence that on every item to which he took exception a credit was given to him on the books, so that when completed the account was in the exact shape which he claimed at that time that it should be in. This closed the account by the assent to its correctness, and it then became an account stated. Whittlesey v. Spofford, 47 Tex. 13. And according

to the court's finding, under any theory of the lawsuit or of the contract, there was nothing due to the appellant at the time of the commencement of the suit. Since the date when the said amount of $14,843.55 was found to be due and owing by the appellant to appellee, appellant had not earned, even under his own theory of the contract, enough to pay off and satisfy the indebtedness so found to be due at that time. Appellant himself testified: "I have been over this exhibit of yours once. I presume it is all right. I did not find anything wrong with it on your theory; but on mine it is all wrong." Again he says: "I knew that was the method of keeping the accounts of July 25, 1910. If it had panned out all right, I would not have had any objections to it. I didn't have any objections to the way the company was handling these notes, and the way they were keeping my accounts on the books I never made any objection. I don't know of any that I can point out that I was not aware that the company was handling in that way. I signed the instrument dated July 25, 1910." He further admits at the same point that he had a memorandum of the full account at that time, and that every one of the items to which he had made the objection as noted in the statement of July 25, 1910, was credited. The position assumed by appellant that there was not an account stated between the parties at the time mentioned as contended by appellee cannot be maintained. Aside from what has already been stated showing such an account, we find that C. A. Goodale, who carried on the negotiations, states emphatically that the statement of account signed and acknowledged by appellant on July 25, 1910, included everything upon which there was any dispute, and there can be no doubt from the testimony of this witness, who carried on the negotiations which led up to the account stated, but who was not connected with appellee at the time he testified, that there was at that time a complete settlement of the account. It not only appears that appellant agreed to the statement of the account as mentioned, but that on the strength of his having agreed to it he procured an increase of his monthly advance from $250 to $350. That appellee must have understood in making such increased advance that the accounts between appellant and itself up to such time had been settled by the account stated cannot well be doubted, and that appellant should be declared estopped, after procuring the pecuniary advantage referred to, and inducing appellee to regard and accept the account then presented as an account stated, from asserting that it was not such account is equally as clear to us. Heidenheimer v. Baumgarten, 9 Tex. Civ. App. 94, 29 S. W. 208; Henry v. Chapman, 4 Willson, Civ. Cas. Ct. App. § 105, 16 S. W. 543; Hampton v. Alford, 4 Willson, Civ. Cas. Ct. App. § 44, 14 S. W. 1072.

[7] Appellant's seventh and eighth assignments are treated together. They relate to and present for decision separate and distinct questions; they are not followed by a sufficient statement of the facts to enable us to determine, without resort to the record, whether or not the trial court erred in the rulings complained of, and, under the rules prescribed for briefing cases, is not entitled to consideration.

The last complaint is styled an error apparent upon the face of the record. The proposition, in substance, is that, if the judgment of the trial court is affirmed, the appellant will lose a valuable right, in that he cannot hereafter recover the commissions which he will have earned when the notes taken for premiums have been collected. If this is the effect of the judgment, to that extent it is erroneous, and will be corrected so as to leave appellant's right to recover hereafter such commissions as he may be entitled to by reason of the collection of any of the notes in question unimpaired by the judgment rendered in this case.

The assignments disclose no reversible error, and the judgment, as modified, is affirmed.